Blanche I. Light et al., appellants, v. Etta Ash et al.,
appellees.

116 N. W. 2d 90

Filed January 11, 1963. No. 35156.

Edwin J. Myers, Frank E. Edgerton, and William L. Andrews, for appellants.

Carlos C. Schaper and Beatty, Clarke, Murphy, Morgan, Pederson & Piccolo, for appellees.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Spencer, Boslaugh, and Brower, JJ.

Brower, J.

Appellants contend on rehearing that this court was in error in holding that the evidence of the oral contract is not clear, convincing, and satisfactory. After a review of this evidence, we conclude that our former opinion reported *ante* p. 44, 115 N. W. 2d 903, arrives at the correct conclusion on this point.

Appellants insist, however, that the testimony of Allen Light and Amber Ash was clear, convincing, and satisfactory, and was sufficient to make a prima facie case. We think there is an additional reason why the contention of appellants cannot be accepted.

Allen Light is the husband of Blanche I. Light, the daughter of Etta Ash. Amber Ash is the wife of Boyd

Ash, a son of Etta Ash. Both are nonresidents of Nebraska and were held to be competent witnesses under our holding in Kiser v. Sullivan, 106 Neb. 454, 184 N. W. 93. We think this decision is in error in holding that the spouses of nonresident owners of Nebraska real estate are competent witnesses.

It is provided by section 25-1202, R. R. S. 1943, in part as follows: "No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness, * * *." The only criterion for determining the competency of a witness under this statute is whether or not the witness will benefit from the result of the case in which he seeks to testify. With the exception of Kiser v. Sullivan, *supra*, this court has consistently adhered to this construction of the statute. See, In re Estate of Tilton, 129 Neb. 872, 263 N. W. 217; Craig v. Seebecker, 135 Neb. 221, 280 N. W. 913; Oft v. Ohrt, 128 Neb. 848, 260 N. W. 571. Under these cases, the interest of the witness in the result of the litigation, and not his relationship or status with interested parties, determined the question of the competency of the witness to testify.

In the instant case, a successful result would invest the four children of Etta Ash with her estate, share and share alike. It would likewise invest the spouses of the children with a marital interest. Each child and spouse therefore has a direct legal interest in the result of the litigation as we held in Holladay v. Rich, 93 Neb. 491, 140 N. W. 794.

In Kiser v. Sullivan, *supra*, we created an exception to the general rule that the competency of a witness under section 25-1202, R. R. S. 1943, was based solely on his interest in the result of the litigation. In Kiser v. Sullivan, *supra*, we determined that because a nonresident owner of Nebraska real estate could bar the marital interest in his spouse without her joining in the

conveyance, as provided by section 30-105, R. R. S. 1943, that the spouse was competent to testify irrespective of section 25-1202, R. R. S. 1943.

The spouse of a nonresident owner of Nebraska land has the same marital interest in it as does the spouse of a resident owner. The fact that the marital interest of a nonresident spouse may be barred by a different form of conveyance than that of a resident spouse does not defeat the marital rights of the nonresident spouse when no such conveyance was made. The assumption in Kiser v. Sullivan, *supra*, that a nonresident spouse had no marital interest in Nebraska real estate because the title-owning spouse could bar it without a joinder of his spouse in the conveyance, is fallacious. We think that the marital interest of the spouse of a nonresident owner of Nebraska real estate is identical with that of the resident owner and that such nonresident spouse is an incompetent witness to the same extent and under the same conditions as a resident spouse. We, therefore, overrule Kiser v. Sullivan, *supra*, as it relates to the competency of spouses of nonresident owners of Nebraska real estate to testify irrespective of section 25-1202, R. R. S. 1943.

Having arrived at this conclusion, Allen Light and Amber Ash were incompetent witnesses, they having a direct legal interest in the result of the litigation within the purview of section 25-1202, R. R. S. 1943. The incompetency of these two witnesses leaves the appellants without competent evidence to support the allegations of their petition. For the reasons stated in this supplemental opinion, in addition to those stated in our previous opinion, the motion for a rehearing is overruled.

MOTION FOR REHEARING OVERRULED.

SPENCER, J., dissenting.

I respectfully dissent from that part of the supplemental opinion which overrules Kiser v. Sullivan, 106 Neb. 454, 184 N. W. 93. In my judgment it has ignored

the development of our law starting in 1879 with interpretation of the Code of Civil Procedure of 1866 and continuing with the adoption of the present act in 1883.

Section 25-1202, R. R. S. 1943, was enacted in 1883 and has never been changed. Previous to that time there was a more restrictive statute which read: "* * * nor shall any person, having a direct legal interest in the result of any civil cause or proceeding, be a competent witness therein, when the adverse party is an executor, administrator or legal representative of a deceased person." G. S. 1873, § 329, p. 582. Under this statute in 1879 we held in Gillette v. Morrison, 9 Neb. 395, 2 N. W. 853, that a husband had no direct legal interest in the separate property of his wife and was a competent witness against the representative of a deceased person.

At common law, any interest rendered a witness incompetent and such interest was not necessarily a direct or legal interest. We said in Wylie v. Charlton, 43 Neb. 840, 62 N. W. 220: "Many years ago it became apparent that the common law rule rendering incompetent as witnesses all persons interested in the result of an action was impolitic, and not adapted to the institutions of modern civilization. The injustice done by excluding such witnesses was manifestly a greater evil than that resulting from admitting their testimony and thus affording a temptation to perjury. The legislatures then began to make inroads upon the rule until the broad step was taken which has been embodied in our Code of Civil Procedure, of enacting that every human being shall be a competent witness in all cases, except under certain contingencies expressly provided for. (Code of Civil Procedure, sec. 328.) In these progressive steps of legislation a great variety of statutes appeared, at first extending the competency of witnesses, and then, in connection with such broad provisions as are found in section 328 of our Code, limiting their competency in certain cases."

In Wylie v. Charlton, *supra,* the court held that a resident wife was an incompetent witness because if her husband succeeded, she immediately acquired an inchoate estate of dower which no act of her husband could defeat. As suggested above in Gillette v. Morrison, *supra,* a husband was held to have no direct legal interest in his wife's action. It is interesting to note that a nonresident wife was not entitled to dower in property aliened by the husband. Atkins v. Atkins, 18 Neb. 474, 25 N. W. 724. In Wylie v. Charlton, *supra,* the husband was permitted to testify in his wife's action against the personal representative of a deceased to establish a contract to convey although the wife was not permitted to testify in his separate action.

The distinction is made in the 1905 case of Hiskett v. Bozarth, 75 Neb. 70, 105 N. W. 990, as follows: "It has been held that, in an action by the husband against the representatives of a deceased person to enforce the performance of a contract with the deceased, the wife is an incompetent witness. Wylie v. Charlton, 43 Neb. 840, 851. It was there held that as an aid in the construction of our statute the common law tests applied, and, applying the test, it was demonstrated that the statutory right of dower of the wife, when once attached, remained a charge and incumbrance upon the real estate of the husband, unless released by the voluntary act of the wife or extinguished by operation of law, and that the statutory inhibition rendered the wife incompetent as a witness in behalf of her husband in that and similar cases, because of her direct legal interest in the result of the suit." It was also said in that case: " 'While it seems clear that the term "interest" was used in our statute in the common law sense, *it is equally clear that by restricting the disqualification to those having a direct legal interest in the action the legislature intended to admit the testimony of some persons having interests not direct* or not legal which at

common law would have excluded them.' (Italics supplied.)

"The right by curtesy is distinguishable from the right by dower in this: that it may be defeated by the deed of the wife and without the consent of the husband. Under the common law rule an heir apparent was held to be a competent witness in behalf of his ancestor, because his interest in the estate was liable to be defeated without his consent and by the act of his ancestor, and his interest was, therefore, too remote to disqualify him as a witness. Applying that test to the question under consideration, it seems evident that the interest of the husband in the result of the controversy is so remote, for the reasons stated, that he was not disqualified and his evidence was properly received."

This was the situation in Nebraska until 1907 when dower and curtesy were abolished by section 4 of chapter 49, Laws of Nebraska, 1907. It should be particularly noted, however, that the very next section of chapter 49, section 5, is our present section 30-105, R. R. S. 1943, which has remained unchanged since that time. Chapter 49 was a new law on "Succession Estates of Decedents" which made sweeping changes in our law of succession, and section 5 gave to resident husbands an interest in the wife's real estate which she could not defeat, so that both resident husbands and wives were then put on an equal basis. However, it left nonresidents, both husbands and wives, in exactly the same situation they were in previous to 1907, in that a conveyance by the owner would bar the interest of the nonresident spouse.

The next case after Hiskett v. Bozarth, *supra,* and the 1907 act, to reach this court was the 1913 case of Holladay v. Rich, 93 Neb. 491, 140 N. W. 794. This case presented substantially the same issue involved in Hiskett v. Bozarth, *supra,* the competency of the husband to testify in his wife's action against the representative of a deceased person. Now, however, the resident

husband was held disqualified because the law had been changed to give him an interest in the real estate of his wife which could not be defeated by any act of the wife. The resident husband, therefore, now had a direct legal interest.

The next case in the series is the 1921 case of Kiser v. Sullivan, *supra*, which the supplemental opinion overrules. This case involved the testimony of the spouse of a nonresident owner and merely stated the law as it had existed for more than 50 years. In that case we said: "Under the provisions of section 1269, Rev. St. 1913 (section 5 of chapter 49, Laws of Nebraska, 1907, and the present section 30-105, R. R. S. 1943), if a married woman owning lands in the state of Nebraska is a nonresident thereof, she may convey the same by her deed, without her husband joining in such conveyance. Under this statute, while plaintiff and her husband were residents of another state, she could, without the consent of her husband, and without his joining in the deed, sell and convey any lands that she might own in Nebraska. Had she succeeded in this action, he would have had no interest in the lands that he could sell and convey. He would have no other than an indirect interest in the success of his wife, and the possibility of inheriting from her in the event she should predecease him while owning lands in this state. The possibility of inheriting is not a direct legal interest, and would not disqualify the witness. Rine v. Rine, 100 Neb. 225. It follows that, as he had no direct legal interest in the result of the suit, he was not disqualified by the statute from testifying, and his evidence should have been considered in deciding the case. His testimony is in the record, and, as this is a trial de novo, it will be considered. We are not unmindful that this court has held, in Holladay v. Rich, 93 Neb. 491: 'In an action by a married woman for specific performance of a contract to convey real estate, her husband has a direct legal interest in the result, within the meaning of section 329 of the Code

(Rev. St. 1913, sec. 7894).' From a reading of the opinion, however, it is clear that the learned justice was then speaking of a situation where the parties were residents of this state; and under the decedent law in this state, where the husband and wife are residents of the state, neither could convey his or her lands without the consent of the other, and the husband would have a direct legal interest in any lands of which the wife was seized during coverture; and, of course, as applying to a situation where husband and wife were residents of Nebraska, and the adverse party was the representative of a deceased person, the husband would not be a competent witness for the wife as to any conversation had with the representative's decedent."

The supplemental opinion is premised upon the theory that the "marital interest" of the spouse of a nonresident owner of Nebraska real estate is identical with that of a resident owner, the only difference being in the method of conveyance. The distinction lies in the fact that the nonresident spouse has nothing to convey, but a resident spouse must join in the conveyance of the resident owner or the interest is not barred.

The supplemental opinion further states that Kiser v. Sullivan, *supra*, created an exception to the rule that the competency of a witness under section 25-1202, R. R. S. 1943, is to be determined by the interest of the witness in the result of the litigation. Kiser v. Sullivan, *supra*, instead of creating an exception, merely recognized a rule that had been announced in the earlier decisions of this court. It had been determined in these cases that where the inchoate interest of the spouse might be defeated by the conveyance of the owner alone, the inchoate interest of the spouse was not such a "direct legal interest" as to disqualify the spouse from testifying. By overruling Kiser v. Sullivan, *supra*, the supplemental opinion arrives at a construction of the statute which is more restrictive than the rule which preceded the statute. All this we do in an attempt to

bring "uniformity" between residents and nonresidents where uniformity has never existed.

The inchoate interest of the nonresident spouse is more analogous to that of a child of the owner because the nonresident spouse will only have an interest if the owner is still seized of the property at his death. The resident spouse, however, from the date the property is acquired has an interest which cannot be defeated unless she or he actually joins in the conveyance of the land.

The rule stated in Kiser v. Sullivan, *supra,* is not peculiar to Nebraska. The rule is stated in a well-recognized text as follows: "Whether a husband is competent to testify in an action by the wife for the recovery of real estate depends upon the nature of the estate which he will acquire if the wife is successful. Under a statute giving the husband no use or other rights in the lands of his wife, and empowering her to dispose of her lands by last will so as to prevent descent to him at her death, he has no such interest as will render him incompetent as a witness. Such expectation as he may have upon the death of his wife without having disposed of her lands does not make him incompetent. But if the husband acquires a present interest in the property *which prevnts the wife from making a conveyance of any part thereof except with his consent,* such spouse is interested in the result of the case, and therefore incompetent." (Italics supplied.) 58 Am. Jur., Witnesses, § 320, p. 196. See, also, Annotation, 27 A. L. R. 2d p. 555.

Judge Boslaugh authorizes me to state that he concurs in this dissent.

CARTER, J., concurring.

I am in accord with the majority opinion in this case. The treatment of the controlling point by the dissent is, however, subject to challenge.

I quite agree that chapter 49, Laws 1907, now sections 30-101 to 30-108, R. R. S. 1943, was a new law that made sweeping changes in the law of descent in this state. It has made cases decided prior to its enactment in-

applicable as to the competency of witnesses under the dead man's statute, section 25-1202, R. R. S. 1943. I submit that the following sentence in the dissent is not a correct statement of the law: "However, it left non-residents, both husbands and wives, in exactly the same situation they were in previous to 1907."

Section 30-101, R. R. S. 1943, provides in part: "When any person shall die, leaving a husband or wife surviving, all the real estate of which the deceased was seized of an estate of inheritance at any time during the marriage, or in which the deceased was possessed of an interest either legal or equitable at the time of his or her death, which has not been lawfully conveyed by the husband and wife while residents of this state, or by the deceased while the husband or wife was a nonresident of this state, which has not been sold under execution or judicial sale * * * shall descend * * * in the manner following: * * *." Reduced to a simple statement the statute says when any person shall die leaving a husband or wife surviving who has not conveyed his estate by the method prescribed, the estate shall descend in the manner therein provided. The statute does not differentiate between residents and nonresidents except as to the method of conveyance of the spouse's interest. Where no conveyance has been made, as here, the spouse of the nonresident title owner has an identical marital interest in his estate in this state, as does the spouse of a resident title owner. The words "When any person shall die" make it clear that residence or nonresidence of the spouse is not a material factor in determining the interest of a spouse under the statute. The interests of resident and nonresident spouses are identical and consequently the dead man's statute should be identically applied.

It is true, of course, that one of the means of deciding whether or not a person has an interest in real estate is to determine if he would be required to join in a conveyance of the property. It is not exclusive, however,

nor is it always a controlling factor. The bare legal title is often in one person while the beneficial interest is in another as in the case of a trustee, executor, or agent with power to convey. In a suit for the benefit of one owning only the equitable title against the representative of a deceased person, the equitable owner would be barred under the dead man's statute even though he would not be required to join in a conveyance of the property.

It is contended in the dissenting opinion that, where the interest of the spouse might be defeated by the conveyance of the owner alone, the spouse has only an interest if the owner is still seized of the property at his death, in other words, her interest is merely speculative. This is just as true as to a resident spouse. If this reasoning is sound, the interests of resident and nonresident spouses are all speculative under the plain language of the act in that the marital interest of each might be defeated by a sale under execution or judicial sale. The possibility of a conveyance by a nonresident husband is no more speculative than the possibility of a sale under execution or judicial sale.

I submit that under section 30-101, R. R. S. 1943, a nonresident spouse of a nonresident title owner of an estate in this state has a marital interest in the estate and the quoted statement to the contrary in the dissenting opinion has no foundation in fact. It would be strange indeed if a witness could be a competent or incompetent witness through the simple expedient of moving his residence across a state line. It is direct legal interest that determines the competency of a witness under the dead man's statute, not where he has his residence.

Judges YEAGER, MESSMORE, and BROWER join in this concurrence.